**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Dolores DeJesus SOLIS,**
**Defendant–Appellant.**

**No. 90–2065.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 1, 1990.

Decided Jan. 25, 1991.

James P. Fleissner, Asst. U.S. Atty., Ava M. Gould, Office of the U.S. Atty., Chicago, Ill., for plaintiff-appellee.

John T. Theis, Chicago, Ill., for defendant-appellant.

Before CUMMINGS, FLAUM, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Dolores DeJesus Solis was convicted of violating 21 U.S.C. § 841(a)(1) (possession with intent to distribute cocaine). Pursuant to the United States Sentencing Guidelines, the district court sentenced her to ninety-seven months in prison and four years of supervised release and fined her twenty thousand dollars. On appeal, Ms. Solis challenges her conviction and sentence. For the following reasons, we conclude that we have no jurisdiction to review the district court's refusal to depart from the guidelines range in imposing sentence. In all other respects, we affirm the judgment of conviction.

# I BACKGROUND

## A. Facts

Acting on a tip, Drug Enforcement Administration Agent Robert Irwin and Chicago Police Officer Robert Glynn approached Ms. Solis in O'Hare Airport and asked to see her ticket. Ms. Solis, a resident of Miami, had a one-way ticket from Chicago to Anchorage, Alaska. It had been purchased with cash. Officer Glynn asked about her luggage, which she indicated she had packed herself. Upon request, she consented to a search of the luggage. Ms. Solis provided the key to unlock one of the pieces. It contained two bricks of cocaine, each weighing approximately a kilogram.

Ms. Solis was arrested. She was found to be carrying notebooks containing several beeper numbers. She told Agent Irwin that a woman, whose last name she did not know, had purchased her airline ticket, put her up for the night in the Chicago area, and driven her to the airport. Ms. Solis explained that she was going to Alaska to see a sick Husky that she previously had purchased. Ms. Solis had made two trips from Miami to Anchorage during the five weeks preceding her arrest. Her airline tickets for at least one of those trips had

also been purchased with cash, as had the Husky. Ms. Solis' monthly income was three hundred eighty-eight dollars from Social Security and Supplemental Security Income.

## B. District Court Proceedings

Ms. Solis was indicted on one count of possession with intent to distribute cocaine. Prior to the taking of testimony in her jury trial, the prosecution submitted a memorandum concerning the admissibility of expert testimony on the practices of drug traffickers, including the use of beepers. Counsel for Ms. Solis made an oral motion in limine in which he contended that the use of beepers is so widespread that any evidence that Ms. Solis was carrying beeper numbers when arrested was irrelevant. He also contended that admission of evidence about the use of beepers by drug traffickers would be highly prejudicial. The prosecutor replied that the critical issue in this case was the defendant's

> intent, whether she knew she had cocaine on her when she was stopped by the Drug Enforcement Administration Agents.
>
> Certainly the fact that she had a number of beeper numbers on her is indicative taken with all of the other evidence in the case of the fact that she knew that she was carrying drugs because she, in fact, was a drug courier, was participating in the drug industry.

Supplemental Transcript (Supp.Tr.) at 7–8.

The court concluded that expert testimony on the use of beepers would be admissible. The court observed that expert testimony "may be helpful to the jury" in considering "the utilization of beepers" in the drug trade. *Id.* at 16. The court added that "for a 68 year old person who is at the poverty level of most definitions of income in the United States to have a large number of friends that own beepers might be a question that the jury could reasonably consider." *Id.* at 17.

At trial, Chicago Police Officer Richard Boyle testified as an expert witness. Over defense objection, he testified about the use of beepers in the drug trade. He noted

that they permit drug traffickers to be anonymous and mobile. Officer Boyle acknowledged during cross-examination that doctors, lawyers, and other people also use beepers and that he could not estimate what percentage of beepers are used by drug traffickers. At the close of testimony, the court instructed the jury that opinions offered by expert witnesses are not binding and must be assessed in light of all the evidence.

The jury failed to reach a verdict, and the court declared a mistrial. Ms. Solis then waived her right to be retried by jury, and the parties agreed to a bench trial based on transcripts and exhibits from the first trial. The court found Ms. Solis guilty as charged in the indictment. On May 2, 1990, the court sentenced Ms. Solis to imprisonment for ninety-seven months.[1] Ms. Solis filed a timely notice of appeal.

## II ANALYSIS

### A. *Expert Testimony*

■ Ms. Solis' only challenge to her conviction is her claim that the district court erred in admitting expert evidence of the use of beepers in drug trafficking. She contends that such evidence was both irrelevant and highly prejudicial.

#### 1. Standard of review

Federal district courts may permit expert testimony by a qualified witness if the court finds that "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid.

---

1. Due to the amount of cocaine involved, the guidelines base offense level was 26. Ms. Solis received a two-level increase for obstruction of justice (§ 3C1.1) because she concealed a prior conviction. Her criminal history category was II, resulting in an applicable guidelines range of 87–108 months.

2. According to Federal Rule of Evidence 401, "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

3. *But cf. United States v. Rollins,* 862 F.2d 1282, 1286 n. 1 (7th Cir.1988) ("Although not impor-

702; *see United States v. de Soto,* 885 F.2d 354, 359 (7th Cir.1989). As the court in *de Soto* noted, expert testimony cannot be helpful unless it is relevant:[2]

> "The helpfulness test subsumes a relevancy analysis. In making its determination, the court must proceed on a case-by-case basis. Its conclusions will depend on (1) the court's evaluation of the state of knowledge presently existing about the subject of the proposed testimony and (2) on the court's appraisal of the facts of the case."

885 F.2d at 359 n. 3 (quoting 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 702[02] at 702–18 (1988)). Relevant evidence is presumptively admissible. *See* Fed.R.Evid. 402. However, a district court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403.

We reverse a district court's admission of expert testimony "'only where the district court commits a clear abuse of discretion.'" *de Soto,* 885 F.2d at 359 (quoting *United States v. Marshall,* 856 F.2d 896, 901 (7th Cir.1988)). The parties have provided and our research has discovered no case from this circuit that directly addresses the admissibility of expert testimony about the use of beepers in drug trafficking.[3] However, courts in other circuits have recognized the value of expert testimony on beepers and other tools of the drug trade.[4]

---

tant to this appeal, it has generally been found that drug traffickers tend to use telephone beepers as an effective means of communicating with buyers and sellers of drugs."), *cert. denied,* 490 U.S. 1074, 109 S.Ct. 2084, 104 L.Ed.2d 648 (1989).

4. *See United States v. Rogers,* 918 F.2d 207, 212–13 (D.C.Cir.1990) ("As the government's expert testified at trial, drug dealers use beepers. The district court properly gave that testimony substantial weight."); *United States v. Roldan-Zapata,* 916 F.2d 795, 800 (2d Cir.1990) (expert witness "explained that narcotics dealers commonly use beepers and move 'from pay phone to pay phone' to arrange transactions and avoid

### 2. Application to this case

The district court did not abuse its discretion in admitting this expert testimony. As counsel for Ms. Solis conceded on appeal, her intent to distribute the cocaine found in her luggage was at issue. The government had to establish that intent through circumstantial evidence. Evidence of Ms. Solis' actions and of the other articles in her possession was therefore relevant on the issue of whether she intended to distribute the contraband. For instance, evidence of repeated trips to Anchorage, paid for in cash by or on behalf of a woman living on Social Security, certainly provides important pieces to the government's evidentiary puzzle. The simultaneous presence of beeper numbers helps complete the picture—*if* the trier of fact is aware of the role that beepers often play in the conduct of illegal drug trade. The government was entitled to demonstrate through the use of expert testimony that someone traveling with two kilograms of cocaine under the conditions we have described would find access to beepers a useful means of effectuating the transportation and eventual distribution of her deadly cargo. An examination of the record indicates that, through a thoughtful dialogue with counsel, the district court concluded that this expert testimony would eliminate unnecessary "speculations" as to whether those in the illegal drug trade regularly use such equipment. Supp.Tr. at 14. We hardly can conclude that this effort to replace speculation with definitiveness was an abuse of discretion.

In *de Soto*, we recognized that there is a particular danger of jury confusion when a government witness testifies as both an eyewitness and an expert witness. 885 F.2d at 360. Although the challenged expert witness in *de Soto* did serve a dual role, we affirmed the admission of his testimony regarding " 'countersurveillance' techniques employed by drug dealers." *Id.* In light of a cautionary instruction given by the district court and the defendants' opportunity to challenge the expert witness' interpretation of the evidence, we determined that the district court had not abused its discretion in admitting the expert testimony. *Id.* at 361; *see infra* note 5.

Here, while the expert testimony was admitted in the first trial, which was conducted before a jury, we now review the second trial, which was tried to the bench. In the context of a bench trial, the possibility of confusion is substantially less. Nevertheless, we note that, in this case, both the prosecution and the district court made every effort to avoid the dangers we identified in *de Soto*. The prosecution offered as an expert witness an officer who did *not* also testify as a fact witness. Moreover, the district court afforded defense counsel full opportunity to cross-examine Officer Boyle and to establish the possibility of legitimate explanations for the beeper numbers as well.[5] Accordingly, we conclude that the district court did not err in admitting the testimony.

### B. *Sentence*

■ Ms. Solis also challenges the length of her prison sentence, arguing that, because she was nearly sixty-nine years old when sentenced, she is likely to die in prison. Absent an error of law or a misapplication of the guidelines, this court lacks jurisdiction to review sentences within the appropriate guidelines range. *See United*

---

detection by the authorities"); *United States v. Sanchez Solis*, 882 F.2d 693, 696 (2d Cir.1989) ("trial court, which reminded the jury that there was no evidence that a beeper had been used in the case, did not abuse its discretion when it decided that the ... probative value [of testimony that drug dealers use beepers] was not 'substantially outweighed' by the danger of undue prejudice"); *United States v. Shurn*, 849 F.2d 1090, 1094 (8th Cir.1988) (prosecution permitted to reopen case to ask expert witness about use of beepers in narcotics dealing); *United States v. Ginsberg*, 758 F.2d 823, 830 (2d Cir.1985) ("trial

judge did not err in finding [expert witness'] testimony regarding beepers admissible").

**5.** *See United States v. de Soto*, 885 F.2d 354, 360–61 (7th Cir.1989) (approving use of expert testimony regarding " 'countersurveillance' techniques" where "jury had an opportunity to hear the defendants' arguments, which cast all these activities in an innocent light").

We also note that, in the first trial, the district court used an instruction that this court approved in *de Soto*, 885 F.2d at 361.

*States v. Braslawsky,* 913 F.2d 466, 467 (7th Cir.1990); *United States v. Marshall,* 908 F.2d 1312, 1326 (7th Cir.) (en banc), *cert. granted sub nom. Chapman v. United States,* — U.S. ——, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990); 18 U.S.C. § 3742(a). Here, there is no such error of law or misapplication of the guidelines.

## CONCLUSION

For the foregoing reasons, we dismiss that part of the appeal that seeks review of the refusal to depart from the guidelines range in imposing sentence. In all other respects, the judgment of conviction is affirmed.

AFFIRMED IN PART AND DISMISSED FOR WANT OF JURISDICTION IN PART.